UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JERRY D. DUGGINS, III, <br><br> Plaintiff, <br><br> v. <br><br> SELENE FINANCE, LP, and DOES 1–10, <br><br> Defendants. | CAUSE NO.: 2:19-CV-201-TLS-JPK |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss [ECF No. 11] filed by the Defendant Selene Finance, LP, on July 30, 2019. The Defendant moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The Plaintiff, Jerry D. Duggins, III, has not responded.[1] For the following reasons, the Motion is GRANTED.

**BACKGROUND**

On May 28, 2019, the Plaintiff filed the Complaint in this Court. Compl., ECF No. 1. The Plaintiff is proceeding pro se. *Id.* The Plaintiff brings four claims. His first claim alleges that the Defendant violated the Fair Debt Collection Practices Act (FDCPA) by acts that can be categorized as either collecting mortgage payments after the Plaintiff was discharged from Chapter 7 bankruptcy, failing to comply with a loan modification, or refusing to break down the amount owed in a reinstatement quote after foreclosure. *Id.* at ¶¶ 19–23. His second claim alleges that the Defendant harmed the Plaintiff by negligently breaching its duty as a mortgage loan

---

[1] The Plaintiff requested an extension of time that the Court granted on August 20, 2019. Aug. 20, 2019 Order, ECF No. 16. The Plaintiff had until September 3, 2019, to respond. *Id.*

servicer through the acts described above. *Id.* at ¶¶ 24–40. The Plaintiff's third claim is for violations of the "Consumer Protection Act Unfair Trade Practices Act (RSA 358-A)" for the reasons described in the first claim. *Id.* at ¶¶ 41–44. The Plaintiff's fourth claim is brought under the Real Estate Settlement Procedures Act (RESPA) alleging that the Defendant was unjustly enriched by collecting unnecessary payments from the Plaintiff. *Id.* at ¶¶ 45–49.

On May 22, 2007, the Plaintiff executed a promissory note secured by a mortgage on a parcel of property in Merrillville, Indiana. Def. Ex. A2, Ex. A, ECF. No 11-1.[2] The mortgage was assigned to the Defendant on October 8, 2014. Def. Ex. A2, Ex. D.

The Plaintiff filed for Chapter 7 bankruptcy on July 15, 2009, and the bankruptcy was discharged on October 19, 2009. Def. Suppl. Ex. A3, at 3, ECF No. 15-1. The Defendant offered the Plaintiff a trial loan modification in April 2015 with payments set at $777 a month. Compl. at ¶ 7. The Defendant advised that a permanent loan modification would be completed after three months, and, according to the Plaintiff, the Defendant continued to collect trial payments until December 2015. *Id.* at ¶¶ 7–8. The parties agreed to an FHA Home Affordable Modification Agreement on November 4, 2015, setting the Plaintiff's monthly payment at $766.23 a month. Def. Ex. A2, Ex. E.

On January 19, 2016, the Defendant sent the Plaintiff a notice informing the Plaintiff that he was in default on his mortgage. Def. Ex. A2, Ex. F. The notice informed the Plaintiff that if he were to remain in default for more than thirty days, the Defendant could begin foreclosure proceedings. *Id.* On June 29, 2016, the Defendant initiated foreclosure proceedings in the Lake County, Indiana, Superior Court. Def. Ex. A1. On November 8, 2016, the Defendant filed a motion for summary judgment. *Id.*

---

[2] All the Defendant's exhibits are attached to its motion at ECF No. 11-1.

The Plaintiff failed to respond, and on April 27, 2017, the state court found in favor of the Defendant and issued a decree of foreclosure. Def. Suppl. Ex. The state court found that the Defendant had complied with Indiana Code § 32-30-10.5's foreclosure prevention agreement requirements, that the Plaintiff had entered bankruptcy on July 15, 2009, and that the bankruptcy had been discharged on October 19, 2009. *Id.* The state court found that the Plaintiff owed the Defendant $126,982.06, which included $3,100 in attorney fees, as well as a monthly interest rate of $392.48 from September 1, 2016, until the date of judgment; a post-judgment interest rate of 4% until paid; and other costs such as attorney fees, sheriff sale costs, insurance premiums, and real estate taxes incurred after September 1, 2016, until the date of the sheriff's sale. *Id.*

The Plaintiff alleges in his Complaint that his first mortgage payment under the loan modification should have been due on February 16, 2017. Compl. at ¶ 23. He also alleges that the Defendant has collected funds and made demands for post-bankruptcy payments. *Id.* He alleges that the Defendant failed to finalize the loan modification agreement and did not conduct a mandatory face-to-face meeting. *Id.*

The Plaintiff filed for Chapter 13 bankruptcy on August 31, 2017, and the petition was terminated on October 27, 2017. Def. Ex. B1.

On July 11, 2018, the Plaintiff filed a Motion to Vacate Judgment with the state court, alleging that the Defendant failed to send a pre-suit letter and attend a face-to-face settlement conference in violation of Ind. Code § 32-30-10.5, *et seq*. Def. Ex. A4. In his affidavit in support, the Plaintiff averred that he was not aware of his legal rights, that the Defendant never sent a pre-suit letter, and that he wishes to request a settlement conference. *Id.* On August 20, 2018, the state court denied his motion and denied his request for a settlement conference. Def. Ex. A5.

On October 2, 2018, the Plaintiff filed for Chapter 7 bankruptcy. Def. Ex. C1. On February 28, 2019, the bankruptcy court terminated the automatic stay on the Plaintiff's property at issue in this case and allowed the Defendant to foreclose upon the property. Def. Ex. C1, C2.

The Plaintiff alleges that, on March 12, 2019, the Defendant issued a reinstatement quote with $7941.79 in corporate advances and "refused" to break down the advances. *Id.* The Plaintiff attached the March 12, 2019 reinstatement quote, which is for a total amount due of $39,823.34, and the quote gives a breakdown of seven categories, including $7,941.79 in corporate advances. Pl. Ex. D, ECF No. 1. He also alleges that, on April 1, 2019, the Defendant issued a reinstatement quote demanding $39,817.96 to reinstate the mortgage and that the Defendant "refused" to provide a specific breakdown of the amount owed. The Plaintiff did not attach the April 1, 2019 quote.

On March 29, 2019, the Defendant filed a praecipe for sheriff's sale. Def. Ex. A1. On April 26, 2019, the state court filed on the docket another copy of the Plaintiff's July 11, 2018 motion and the court's August 20, 2018 order denying the motion as well as other related foreclosure documents from 2018. *See id.;* Def. Ex. A6; Def. Ex. A7.

On July 11, 2019, the Plaintiff filed a Chapter 13 bankruptcy petition. Def. Ex. D1.

## STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss "tests the jurisdictional sufficiency of the complaint." *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017) (citing *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)). "When considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Alicea-Hernandez v. Catholic Bishop of*

4

*Chi.*, 320 F.3d 698, 701 (7th Cir. 2003) (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)); *see also Nielsen*, 878 F.3d at 573.

However, a movant may present evidence to support a contention that there is in fact no subject matter jurisdiction, despite a facially valid complaint, and "the court is free to weigh the evidence to determine whether jurisdiction has been established." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012); *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) ("The law is clear that when considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.") (quotation marks and brackets omitted). The presumption of correctness accorded "to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." *Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999). "The plaintiff has the obligation to establish jurisdiction by competent proof." *Id.* at 855–56.

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, the Court must accept all of the factual allegations as true and draw all reasonable inferences in the light most favorable to the Plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Bell v. City of*

*Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). However, though a complaint need not contain detailed facts, surviving a Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Because the purpose of a motion to dismiss "is to test the formal sufficiency of the statement of the claim for relief[,] the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed.).

The Plaintiff is proceeding pro se. The Court "liberally construe[s] the pleadings of individuals who proceed pro se." *Greer v. Bd. of Educ. of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001). "The essence of liberal construction is to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." *Id.* (quoting *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998)). However, the Court "still holds Plaintiff to the same substantive standards as other civil litigants when it considers the motion [to dismiss]." *Runnels v. Armstrong World Indus., Inc.*, 105 F. Supp. 2d 914, 918 (C.D. Ill. 2000).

ANALYSIS

A.   *Rooker-Feldman* Doctrine

The Defendant first argues that the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, "lower federal courts lack jurisdiction to review the decisions of state courts in civil cases." *Gilbert v. Ill. Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005); *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008)). The doctrine only applies to a "narrow segment of cases." *Andrade v. City of Hammond*, 9 F.4th 947, 949 (7th Cir. 2021). "Preclusion, comity, and other abstention doctrines will more often come into play to 'allow federal courts to stay or dismiss proceedings in deference to state-court actions.'" *Id.* at 950 (quoting *Exxon Mobil Corp. v.*, 544 U.S. at 284).

The doctrine "prevents a state-court loser from bringing suit in federal court in order effectively to set aside the state-court judgment" and "applies even though the state court judgment might be erroneous or even unconstitutional." *Gilbert*, 591 F.3d at 900 (citations and quotation marks omitted). Federal claims are barred in two instances under the doctrine: "The first involves a plaintiff's request of a federal district court to overturn an adverse state court judgment. The second, and more difficult instance, involves federal claims that were not raised in state court or do not on their face require review of a state court's decision." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) (citing *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532–33 (7th Cir. 2004)). In the second case, "*Rooker-Feldman* will act as a jurisdictional bar if those claims are 'inextricably intertwined' with a state court judgment." *Id.* (quoting *Taylor*, 374 F.3d at 533); *see Andrade*, 9 F.4th at 950. A claim is "inextricably intertwined with a state-court judgment" when "there [is] no way for the injury complained of by [the] plaintiff to

7

be separated from [the] state court judgment." *Andrade*, 9 F.4th at 950 (quoting *Jakupovic v. Curran*, 850 F.3d 898, 903 (2017)). When an injury is directly caused by the state court's order, the *Rooker-Feldman* doctrine applies, but when the injury occurs before any judicial involvement, the doctrine does not apply. *Id.* at 950–51.

The *Rooker-Feldman* doctrine has been applied to federal court litigants who seek to overturn a foreclosure under the FDCPA for claims that are dependent on the state court's order. In *Mains v. Citibank, N.A.*, the plaintiff's claims were based on the defendants' attempts to collect from the plaintiff *after* the state court entered a judgment of foreclosure. 852 F.3d 669, 677–78 (2017). The plaintiff's claims that the defendants attempts to apply the FDCPA and the RESPA on the collection from the state court's judgment of foreclosure were barred by the *Rooker-Feldman* doctrine. *Id.* at 676–78. In contrast, the plaintiff's claims under the FDCPA based upon the defendant's attempt to seek foreclosure based on an illegitimate debt were properly considered under issue preclusion rather than the *Rooker-Feldman* doctrine. *Id.* at 678; *see also Long v. Shorebank Dev. Corp.*, 182 F.2d 548 (7th Cir. 1999).

The *Rooker-Feldman* doctrine does not apply to the Plaintiff's claims in this case, and the Court has subject matter jurisdiction over his claims. The Plaintiff's claims are based upon the Defendant's actions that form an independent basis for claims under the FDCPA, Indiana state law, or RESPA. The Plaintiff alleges that the Defendant improperly sought payments and failed to comply with a negotiated repayment plan and that there were issues with the reinstatement fees. The Court has subject matter jurisdiction to consider his claims because the claims exist independently of the state court's foreclosure judgment.

**B.     Issue Preclusion**

As also argued by the Defendant, the first two of the Plaintiff's claims of FDCPA violations, the state law consumer protection claims, and the claim of RESPA violations are barred under issue preclusion. Issue preclusion may apply even when the *Rooker-Feldman* doctrine does not. Under federal law, issue preclusion requires that "(1) the issue sought to be precluded [was] the same as that involved in the prior litigation, (2) the issue [was] actually litigated, (3) the determination of the issue [was] essential to the final judgment, and (4) the party against whom estoppel is invoked [was] fully represented in the prior action." *Oneida Nation v. Village of Hobart*, 968 F.3d 664, 686 (7th Cir. 2020) (quoting *In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019)) (alterations in original).

Under Indiana law, "[i]ssue preclusion, or collateral estoppel, bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former lawsuit and that same fact or issue is presented in a subsequent suit." *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012) (citing *Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 167 (Ind. 1996)). Thus, Indiana issue preclusion requires three elements: "(1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action." *Id.* (citing *Small v. Centocor, Inc.*, 731 N.E.2d 22, 28 (Ind. Ct. App. 2000)). For defensive issue preclusion, which is asserted in this case, "two additional considerations are relevant . . . : 'whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit the use of [issue preclusion].'" *Id.* (quoting *Small*, 731 N.E.2d at 28). The party invoking preclusion bears the burden of

9

establishing that all the elements are met. *See In re Calvert*, 913 F.3d at 702; *Perez-Grahovac v. State*, 894 N.E.2d 578, 584 (Ind. Ct. App. 2008).

Issue preclusion may apply to issues that were resolved in a state foreclosure proceeding. For example, after a state law foreclosure, the foreclosed-upon party may not assert that he is not liable for the missed payments that caused the foreclosure. *Mains*, 852 F.3d at 678. The state court's entry of a foreclosure judgment precludes a federal court plaintiff from arguing that the defendant's arguments for bringing the foreclosure were erroneous or wrongful. *Id.* Under RESPA, the plaintiff is precluded from disputing fees that accrued before the state court's decision. *Id.* at 676.

Here, the Plaintiff's claims under the FDCPA and RESPA are barred by issue preclusion. The Plaintiff's allegations that the Defendant should not have requested payments after his earlier bankruptcy is an argument that is precluded by the state court's foreclosure judgment. Similarly, the Plaintiff's claims that the Defendant did not properly renegotiate the payments was determined by the state court when it entered the foreclosure judgment. Therefore, these FDCPA and RESPA claims are barred by issue preclusion and are dismissed with prejudice.

The Plaintiff's state law consumer protection claims are likewise precluded. As an initial matter, the Plaintiff brings his consumer protection claims under "[t]he Consumer Protection Act Unfair Trade Practices Act (RSA 357-A)," a New Hampshire statute. *See Reynolds v. JP Morgan Chase Bank N.A.*, No. 119-CV-1261, 2020 WL 12654667, at *5–6 (S.D. Ind. Feb. 5, 2020) (addressing the plaintiff's attempt to bring a claim in Indiana under this act). Liberally construing his claims as brought under Indiana's Deceptive Consumer Sales Act (IDCPA), the issues the Plaintiff raises are precluded. Under the IDCPA, "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind.

Code § 24-5-0.5-3(a). A supplier, as defined by the IDCPA, includes debt collectors. *Id.* § 24-5-0.5-2(3)(B). The IDCPA lists violations of the FDCPA as one of the enumerated examples of IDCPA violations. *Id.* § 24-5-0.5-3(b)(20).[3] However, for the reasons addressed above, these claims are based on issues already decided by the state court in the foreclosure proceeding. Therefore, these claims are barred by issue preclusion and are dismissed with prejudice.

**C.    Failure to State a Claim**

To the extent that the Plaintiff seeks to recover under the FDCPA based on the Defendant's alleged failure to breakdown the reinstatement fee, he fails to state a claim. The Defendant did breakdown the reinstatement fees in the March 12, 2019 reinstatement quote. The Plaintiff fails to demonstrate how the failure to further breakdown the corporate advance fees violate the FDCPA.

Finally, as argued by the Defendant, the Plaintiff's general negligence claim must be dismissed because the Plaintiff cannot bring a negligence claim as a tort against the Defendant, with whom the Plaintiff has a contractual relationship. Under Indiana law, a plaintiff cannot restyle a breach of contract claim as a tort claim. *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012). Tort law is inapplicable when the party's duty derives from a contract. *Id.* In contrast, a tort remedy may be available when a party could bring the tort even if there were no contract, such as a fraud claim that resulted in an injury distinct from the injury caused by the breach of contract. *Id.* Here, the Plaintiff's negligence claim is not independent of the contractual relationship because the Defendant's alleged duty

---

[3] The enumerated list of violations is not all-inclusive. *See* Ind. Code § 24-5-0.5-3(b). However, the Plaintiff's arguments are based on the same conduct he alleges in his FDCPA claim, and his Complaint does not indicate any additional claims under the IDCPA.

derives from the contractual relationship with the Plaintiff. Accordingly, the Court dismisses the negligence claim without prejudice.

## CONCLUSION

Based on the foregoing, the Court hereby GRANTS the Defendant's Motion to Dismiss [ECF No. 11]. The Court dismisses with prejudice the Plaintiff's FDCPA claims related to payments and the payment plan prior to the state foreclosure judgment, RESPA claims, and state law consumer protection claims. The Court dismisses without prejudice the Plaintiff's state law negligence claim and the FDCPA claim based on the reinstatement quote.

SO ORDERED on May 6, 2022.

                                          s/ Theresa L. Springmann
                                        JUDGE THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT